T.C. Summary Opinion 2004-10

UNITED STATES TAX COURT

RICHARD G. TUCK, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 14728-02S.            Filed February 4, 2004.

Richard G. Tuck, pro se.

<u>Carina J. Campobasso</u>, for respondent.


GOLDBERG, <u>Special Trial Judge</u>:  This case was heard pursuant
to the provisions of section 7463 of the Internal Revenue Code in
effect at the time the petition was filed.  The decision to be
entered is not reviewable by any other court, and this opinion
should not be cited as authority.  Unless otherwise indicated,
subsequent section references are to the Internal Revenue Code in
effect for the year in issue, and all Rule references are to the
Tax Court Rules of Practice and Procedure.

Respondent determined a deficiency in petitioner's Federal income tax of $17,632 for the taxable year 1998.

The issues for decision are (1) whether petitioner is entitled to deduct as a business expense the cost of a double-wide manufactured home which he purchased for a former girlfriend/employee and for his two children, and (2) whether petitioner is entitled to deduct certain legal expenses as business expenses.[1]

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioner resided in Campton, New Hampshire, on the date the petition was filed in this case.

Petitioner operates a general contracting business as a sole proprietor under the business name of R.G. Tuck Builders. In late 1992, petitioner and Lisa Brownell (Ms. Brownell) began both a business relationship and a personal relationship. Ms. Brownell worked in petitioner's office handling matters related to petitioner's general contracting business, as well as certain rental apartments. Ms. Brownell earned wages of $105 per week, and petitioner reported her wages on Forms W-2, Wage and Tax Statement. Petitioner and Ms. Brownell resided together during

---

[1]Petitioner does not dispute any other adjustments in the notice of deficiency.

this time with their two children. Petitioner moved out of the shared residence in approximately April 1997.

On April 9, 1998, petitioner and Ms. Brownell entered into a permanent stipulation with respect to a proceeding brought in the State of New Hampshire Judicial Branch, Family Division. In the permanent stipulation, petitioner and Ms. Brownell entered into an agreement concerning a number of issues, including paternity, custody, visitation, and payment of expenses for their children. Section 16 of the permanent stipulation provided that petitioner was to receive all interest in his general contracting business:

> <u>Business Interests Of The Parties</u>. Respondent [petitioner] is awarded all interest in rental real estate standing in his sole name and all interest in Tuck Builders.

Section 19 of the permanent stipulation allocated real property between petitioner and Ms. Brownell:

> A. The parties jointly own real estate in Campton, New Hampshire known as the "John Saunders house." Petitioner [Ms. Brownell] shall quitclaim her interest in the property to Respondent at the same time that Respondent deeds the property identified in either paragraph B or C below to Petitioner. Respondent shall pay Petitioner $33,000 for her interest in said property. Respondent will pay Petitioner $11,000 between April 1 and June 30 of each year for three consecutive years with the first payment due on or before June 30, 1999. Respondent shall sign a note and mortgage in favor of Petitioner to secure his obligations hereunder.
> B. Respondent owns certain real estate at Lot #7 in Blair Intervale in Campton, New Hampshire. Respondent shall purchase and have set up on said lot a 28' x 60' 1998 Patriot Homes Victorian double wide ranch style manufactured home * * * Respondent shall transfer the property to Petitioner free and clear of any liens and encumbrances, except as follows:

(i) Respondent shall have a lien against the proceeds from any sale of said real estate for a period of time not to exceed eight years from the date of the transfer.
(ii) The lien shall be for the value of the net proceeds reduced each year by an amount equal to one eighth of the net proceeds.  After eight years, Petitioner would receive the full net proceeds from any sale of the real estate. * * *
(v) During the term of the lien on the real estate, Petitioner agrees to maintain the real estate as the primary residence for the children. * * *
(ix) Respondent agrees to substitute his lien for a similar lien on real estate to be occupied by Petitioner and the children within a twenty mile radius of Respondent's home.

Paragraph C of section 19 of the permanent stipulation provided for the transfer of an alternate property if petitioner was unable to convey the property described in paragraph B. Petitioner was to take the alternate property and "remodel said real estate as a home for" Ms. Brownell.  The alternate property would have been subject to a lien with provisions identical to those detailed above.  Finally, section 19 of the permanent stipulation provided:

D.  The home in which the parties resided located in Campton, New Hampshire and standing in Respondent's name is awarded to Respondent free and clear of all interest of Petitioner.  Petitioner may continue to reside at the property until the manufactured home is set up and ready to be occupied * * * at which time Petitioner will move to the manufactured home * * * and Respondent may resume occupancy of the Campton house. * * *
E.  Respondent is awarded all other real estate standing in Respondent's name, free and clear of all interest of Petitioner.

Pursuant to the permanent stipulation, petitioner purchased a manufactured home for Ms. Brownell in 1998 for $43,003.

Petitioner did not issue Ms. Brownell a Form W-2 in connection with the manufactured home.

Petitioner filed a Federal income tax return for taxable year 1998. With this return, he filed a Schedule C, Profit or Loss From Business, for his general contracting business. Petitioner reported cost of goods sold of $470,394. As part of this amount, petitioner included $43,003 for the double-wide manufactured home. Separately, petitioner claimed deductions on the Schedule C for wage expenses of $33,576 and for legal and professional services expenses of $16,149. In the notice of deficiency, respondent determined that the purchase of the manufactured home was a nondeductible personal expense and not properly characterized as a cost of goods sold.[2] Respondent also disallowed $6,610 of the claimed deduction for legal expenses because they likewise were determined to be nondeductible personal expenses.

The issues in this case are decided on the basis of the record without regard to the burden of proof. See sec. 7491; Rule 142(a).

The first issue for decision is whether petitioner is entitled to deduct as a business expense the cost of the

---

[2]Petitioner no longer argues that the cost of the manufactured home should be included in the Schedule C cost of goods sold. Rather, in his brief he argues that he is entitled to deduct the cost of the home as a business expense.

manufactured home he purchased for Ms. Brownell and his two children.  Petitioner's sole argument in his brief is that the cost of the home represents compensation for past services rendered by Ms. Brownell in connection with petitioner's business.

Personal, living, and family expenses generally are not deductible.  Sec. 262(a).  Expenses which are ordinary and necessary in carrying on a trade or business, on the other hand, are generally deductible.  Sec. 162(a).  Compensation for services may be deductible as an ordinary and necessary business expense, but only if payment is made with the intent to compensate.  Paula Constr. Co. v. Commissioner, 58 T.C. 1055, 1058 (1972), affd. without published opinion 474 F.2d 1345 (5th Cir. 1973).  The existence of such an intent is a factual question to be decided on the basis of the particular facts and circumstances of the case.  Id. at 1059.

Petitioner's argument concerning his intent in purchasing and transferring the manufactured home is not persuasive.  In reaching this conclusion, we find the permanent stipulation-- which was entered into just before the manufactured home was purchased and given to Ms. Brownell--to be more reliable as evidence of petitioner's intent than petitioner's testimony at

trial.[3] It is clear from the permanent stipulation that the manufactured home was given to Ms. Brownell in a division of property following the termination of their personal relationship. It is also clear that the intent behind the agreement to transfer the home was to provide Ms. Brownell and petitioner's own children with a residence after they were required to leave petitioner's residence. Furthermore, the terms of the permanent stipulation established a lien on the property in favor of petitioner for a number of years after the transfer to Ms. Brownell. Because the lien caused Ms. Brownell to have only a limited interest in the manufactured home, the existence of such a lien is inconsistent with an intent by petitioner to provide Ms. Brownell with compensation for past services. Finally, petitioner in prior years had issued Ms. Brownell Forms W-2 for the compensation which he paid to her, and on his 1998 Federal income tax return he reported wage expenses of $33,576. However, petitioner did not issue a Form W-2 for the manufactured home, and on his 1998 return he characterized the cost of the manufactured home as a cost of goods sold rather than as wages. This is further evidence that petitioner did not intend at that

---

[3]Petitioner also provided a written statement from Ms. Brownell--signed on the day before this case was tried and apparently prepared by petitioner's accountant--which in essence recites the events as petitioner portrayed them at trial. We do not accept this statement as reliable evidence of petitioner's intent at the time the manufactured home was purchased and given to Ms. Brownell.

time for the purchase and transfer of the manufactured home to be compensation.

At trial, petitioner asserted that Ms. Brownell "signed off her right to sue" him in section 16 of the permanent stipulation. He argues that this provision is evidence that there was an agreement that Ms. Brownell would accept the manufactured home in exchange for any past claim for compensation for her services. We find nothing in this provision to support petitioner's argument. This provision was one of numerous provisions in the permanent stipulation covering issues ranging from paternity and custody of the children to the property interests of petitioner and Ms. Brownell. There is no indication that this provision was in any way connected with the provision granting Ms. Brownell the right to the manufactured home, nor is there any indication that it was intended in any manner to waive a claim by Ms. Brownell to sue for compensation for past services.

We conclude that petitioner purchased the manufactured home in order to fulfill the terms of the permanent stipulation he entered into with Ms. Brownell, and that the purchase was a personal expense incurred in connection with his relationship with Ms. Brownell, as well as petitioner's own children. Consequently, the purchase is a nondeductible expense pursuant to section 262(a) and not an ordinary and necessary business expense.

The second issue for decision is whether petitioner is entitled to deduct the legal expenses of $6,610 as a trade or business expense. Petitioner did not raise this issue in his petition, nor did he address it in his posttrial brief. However, we briefly discuss the issue because the parties addressed it at trial.

Petitioner testified that all or a portion of the legal expenses of $6,610 were incurred in connection with the permanent stipulation he entered into with Ms. Brownell, as discussed above. Other than this cursory testimony, petitioner provided no substantiation concerning the nature or the amount of the legal expenses which he incurred.

Because the permanent stipulation was entered into by petitioner and Ms. Brownell as a result of their personal relationship, we conclude that the legal expenses incurred in connection with the permanent stipulation were nondeductible personal expenses under section 262(a), rather than trade or business expenses deductible under section 162(a).

Reviewed and adopted as the report of the Small Tax Case Division.

<u>Decision will be entered</u>

<u>for respondent</u>.